***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Ledford, along with the briefs and arguments on appeal. The appealing party has shown good grounds to reconsider the evidence. The Full Commission MODIFIES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy as:
 STIPULATIONS
1. As of 27 January 2001, the parties were bound by and subject to the provisions of the Workers' Compensation Act; defendant-employers Cherokee County and H.T. Hackney Petroleum d/b/a Valley River Amoco ("Hackney") each regularly employed more than three employees.
2. As of 27 January 2001, the employee-employer relationship existed between the plaintiff-employee and defendant-employers Cherokee County and Hackney.
3. As of 27 January 2001 defendant-employer Cherokee County was self-insured and its servicing agent was Sedgwick CMS, Inc. ("Sedgwick").
4. As of 27 January 2001 defendant-employer Hackney was insured by American Home Company (administered by AIG Claim Services, Inc. known as "AIG").
5. Plaintiff-employee's average weekly wage with defendant Cherokee County as of 27 January 2001 can be computed using a Form 22 completed by Cherokee County.
6. Plaintiff-employee's average weekly wage with defendant Hackney as of 27 January 2001 can be computed using a Form 22 completed by Hackney.
7. Plaintiff-employee suffered an injury by accident arising out of and in the course and scope of his employment with Cherokee County on 27 January 2001.
8. On 23 February 2001 defendant Cherokee County and Sedgwick filed an I.C. Form 63 giving notice of payment without prejudice to the plaintiff-employee as a result of an injury that occurred on January 27, 2001.
9. The plaintiff-employee and defendants Cherokee County and Sedgwick contend that plaintiff-employee was also acting in the course and scope of his employment with Hackney when he was injured on 27 January 2001. Defendants Hackney and AIG deny this contention.
10. The parties also stipulated to a number of exhibits, which were introduced at the hearing of this matter, including the following:
a. I.C. pleadings and Forms (9 forms) tabbed and marked as Stipulated Ex. 1;
b. 60 pages of medical records, tabbed and marked as Stipulated Ex. 2;
c. A three-page incident/investigation report authored by officer Bill Waldroup of the Andrews Police Department, marked as Stipulated Ex. 3;
d. A four-page incident/investigation report authored by Officer Clay Hardin of the Andrews Police Department, marked as Stipulated Ex. 4;
e. A two-page incident/investigation report authored by B.V. Waldroup of the Andrews Police Department, marked as Stipulated Ex. 5;
f. A two-page narrative report authored by Special agent T.R. Frye, marked as Stipulated Ex. 6; and
g. A two-page search warrant for the perpetrator, Paul Sidney Allen, marked as Stipulated Ex. 7.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was twenty-nine years of age at the time of the hearing before the Deputy Commissioner. Plaintiff is a high school graduate, with two years of community college. He has been certified as a law enforcement officer since 1995, and previously worked for the Murphy Police Department. In June 1999, plaintiff began full-time work as a sheriff's deputy for Cherokee County. On 27 January 2001, plaintiff became an investigator for the Sheriff's Department.
2. Upon accepting a position as a sheriff's deputy, plaintiff took an "Oath of Office of Deputy Sheriff" in which he obligated himself to "be alert and vigilant to enforce the criminal laws of this State," to "maintain the Constitution and laws of the United States and the Constitution and laws of North Carolina," and "to faithfully and impartially discharge and execute the duties of [his] Office as a Law Enforcement Officer according to the best of [his] skill, abilities, and judgment."
3. At all relevant times, employer Cherokee County, through its Sheriff's Office had policies in place requiring its deputy sheriffs when off duty to intervene if a felony or violent crime occurs in their presence and do everything within their ability to apprehend the suspect.
4. In August 2000, as a means to supplement his income, plaintiff began working part-time for employer Hackney Petroleum as an inventory stocker at the Valley River Amoco, a convenience store and gas station located in Cherokee County. Plaintiff learned of the availability of this position through his father-in-law, who was an employee at the store. After submitting an application and interviewing with the store manager, Robert Pulliam, plaintiff was offered the position. Plaintiff's duties as a stocker involved placing inventory items onto shelves and into refrigerated coolers, as well as being responsible for cleaning the floors and the outside parking lot. When he was hired, neither Mr. Pulliam nor plaintiff anticipated that plaintiff would perform any security services for employer Hackney Petroleum.
5. Sheriff Keith Lovin testified that the Sheriff's office policy allowed their deputies to have secondary employment, so long as there was no conflict of interest.
6. During plaintiff's employment, Hackney Petroleum had in effect policies and procedures that are contained and highlighted in a company handbook. Mr. Pulliam kept the handbook in his office and, as a matter of routine he told new employees the handbook was available for review. These policies and procedures prohibited employees of Hackney Petroleum from carrying firearms onto its properties, including Valley River Amoco, and instructed employees regarding their response to a robbery. The procedures state that when faced with a robbery, employees were to "cooperate completely" and "give in to an assailant's demands, with the exception of going with him/her" and were to call the police. When he worked as a stocker, plaintiff occasionally carried his off-duty weapon, which he kept concealed.
7. On the evening of January 17, 2001, plaintiff was off duty as a deputy, and working his part-time stocker position at Valley River Amoco. A cashier, Brenda Trammell was also working that night at the Amoco station. At approximately 10:20 p.m., plaintiff was stocking a refrigerated cooler when a man carrying a rifle entered the store, pointed the rifle at Ms. Trammell, who was standing behind the store's front counter, and demanded money. Plaintiff had quietly stepped out of the refrigerator and witnessed this. Ms. Trammel looked in plaintiff's direction and plaintiff nodded his head at her to indicate that she should cooperate and hand over the money, and at the same time not give the robber notice of plaintiff's presence. Ms. Trammel then handed the robber the cash register money and the robber exited the store. Ms. Trammel set off the store's silent alarm system.
8. Plaintiff followed the robber out of the store. Plaintiff pulled out his off-duty weapon and called out to the robber, identifying himself as a deputy sheriff and ordering the robber to stop. The robber ignored plaintiff's command and entered a vehicle to flee the scene. In an attempt to apprehend the robber, plaintiff approached the vehicle and reached into the driver's side door to grab him. The last thing that plaintiff remembered was holding the driver's side door of the robber's car open and attempting to pull the robber out.
9. Subsequent investigation of the crime scene shows that the robber apparently first backed up the vehicle, knocking plaintiff to the ground, and then drove the vehicle in reverse over plaintiff's head. The robber then drove forward, running over plaintiff's head a second time, inflicting serious injury on plaintiff's head and about his body.
10. Plaintiff's actions in attempting to apprehend the robber were in compliance with his sworn obligations as a Deputy Sheriff and the policies and procedures of the Cherokee County Sheriff's Office. Therefore, as Cherokee County has acknowledged, even though plaintiff was "off duty" his injuries sustained due to this robber's assault arose out of and in the course of his employment as a deputy sheriff and are compensable.
11. At the time of the assault, plaintiff was not acting in the course and scope of his employment with Hackney Petroleum. In attempting to apprehend the robber, plaintiff was acting solely in the course and scope of his employment with Cherokee County. His obligation to prevent a serious crime and actions in attempting to apprehend the robber were founded in his job as a Deputy Sheriff, and were in direct contradiction to the policies governing the behavior of Hackney Petroleum employees.
12. On January 27, 2001 the plaintiff sustained an injury by accident in the parking lot of Hackney Petroleum's Valley River Amoco property, which solely arose out of and in the course and scope of his employment with Cherokee County.
13. Plaintiff was severely injured as a result of the assault. He received emergency treatment at District Memorial Hospital in Andrews, North Carolina, and was then transported by emergency helicopter to the University of Tennessee Memorial Hospital in Knoxville, Tennessee for further treatment. At Memorial Hospital, plaintiff was diagnosed with open mandible fractures, maxillary fractures and lacerations on his lip and cheek. He needed a tracheotomy to control his airway. Plaintiff also suffered several cracked ribs, and a number of his front teeth were knocked out. Plaintiff has undergone several reconstructive surgeries. As of the hearing, he had not reached maximum medical improvement and still needed at least two more surgeries to finish replacing his teeth. The best management of future medical care is to designate one carrier to be responsible for such provision of care, and payment of medical bills.
14. As a direct and proximate result of the injuries he sustained while attempting to apprehend the robber, plaintiff was unable to earn wages in any employment and was totally disabled beginning January 28, 2001 and continuing through September 5, 2001. Admirably, on September 6, 2001, plaintiff returned to work as a full-time deputy sheriff for employer Cherokee County. He was initially assigned as a DARE officer, instructing local students on the dangers associated with illegal drug use. Shortly thereafter he was assigned to the crime scene investigation unit, where he continued to work at the time of the hearing before the Deputy Commissioner.
15. Defendant Cherokee County/Sedgwick have paid plaintiff's related medical expenses and workers compensation disability benefits for all times that plaintiff has been out of work since the incident. The disability benefits were based upon his average weekly wages with Cherokee County in the amount of $465.83, with compensation being paid at the rate of $310.57 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Because plaintiff was acting solely within the course and scope of his employment with the Cherokee County Sheriff's office, plaintiff was not engaged in joint employment at the time of the incident of 27 January 2001. Defendants Hackney Petroleum and AIG Claim Services, Inc. bear no responsibility for the incident of 27 January 2001. N.C. Gen. Stat. §97-51.
2. Plaintiff suffered a compensable injury by accident on 27 January 2001 when plaintiff was seriously injured as he acted in accordance with Cherokee Sheriff's Office regulations and attempted to arrest a robber while off-duty. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is entitled to temporary total disability compensation payments at a rate of $310.57 per week for the period he was unable to work due to the compensable injury by accident of 27 January 2001. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to the payment of all medical costs related to the 27 January 2001 injury by accident, including future medical costs, by defendants Cherokee County and Sedgwick, CMS. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to the payment of any potential future temporary total disability compensation plaintiff may require due to the 27 January 2001 compensable injury by accident. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Because plaintiff was acting solely within in the course and scope of his employment with the Cherokee County Sheriff's office, defendants H.T. Hackney Petroleum and AIG Claim Services, Inc. are not responsible for plaintiff's 27 January 2001 compensable injury by accident.
2. Defendant Cherokee County/Sedgwick CMS shall continue to pay all of plaintiff's medical costs related to the 27 January 2001 compensable injury by accident.
3. Because plaintiff has not reached maximum medical improvement, this Opinion and Award does not address the issue of compensation for permanent impairment ratings. At the appropriate time in the future, if plaintiff and defendant Cherokee County/Sedgwick CMS cannot agree on the amount of permanent partial disability compensation due plaintiff, either party may file a Form 33 to request a hearing on that issue.
4. An attorney's fee of twenty-five percent of the compensation paid to plaintiff by defendants Cherokee County and Sedgwick CMS is approved for plaintiff's counsel, to be deducted from the lump sum due plaintiff and paid directly to counsel.
5. Defendant Cherokee County/Sedgwick CMS shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER